ROBERT W. GLENN *v.* THE CHARLOTTE & SOUTH CARO-LINA R. R. COMPANY.

Where a Carrier, upon being applied to by the owner to deliver cer-tain cotton, (then at its depot and in its possession for transporta-tion) to another Rail Road Company, declined to do it, or to allow the owner to do it—promising to deliver it, itself, within three days;. *Held*, that it was *gross negligence* for such Carrier to allow the cotton to remain undelivered for several months afterwards and until it became rotten by exposure to the weather.

If a jury decide correctly a question of law improperly left to them by the Court, the verdict cures the error of the Court.

*Semble*, That a *Common Carrier for hire*, can protect himself by an *express contract*, to such extent only as will render his liability no greater than that of a *Special Carrier for hire; also*, that to render a parol contract to that effect binding upon the other party, there should be *a consideration* therefor; and that otherwise it would be *nudum pactum*.

(*Craton's* case, 6 Ire. 164, cited and approved.)

CASE, tried before *Tourgee, J.*, at Spring Term 1869 of the Superior Court of GUILFORD.

The plaintiff declared against the defendant as a common Carrier, Warehouseman and Forwarder, for damages sus-tained in the loss of certain cotton received by the defendant. at Columbia S. C., for transportation to High Point in Guil-ford County.

The cotton was received by the defendant in February 1864, under a special contract in writing, by which it was.

claimed that it was liable for gross neglect only. It was carried to Charlotte, and the damage sustained by it was received at the depot there, where it was left upon the ground exposed to the weather for several months, until the larger portion of it had rotted. It had reached that point about the first of March 1864, and remained there until August.

It was shown for the plaintiff that he had gone to Charlotte about the first of April 1864, and after some negotiation with officials upon both Roads, had been imformed that the N. C. R. R. Co., would receive and transport the cotton immediately, the cotton being then in fair order, lying as above described, at the depot; that upon applying at the office of the defendant to have it delivered at once, he was told that their hands were absent upon some other employment; and upon his offering to hire hands himself in order to deliver the cotton, he was also told that the defendant would not permit freight that was in its hands for transportation, to be interfered with in that way—the official adding that the cotton would be delivered to the North Carolina R. R. Co., during the next three days. The plaintiff being satisfied with these assurances returned to his home in Guilford.

The defendant introduced evidence tending to show that its Road was then greatly embarrassed and encumbered by military orders freight and passengers; and, with regard to the cotton, that on the next day after the plaintiff had visited Charlotte (as above) the defendant had offered to deliver the cotton to one Keisler the receiving and loading clerk of the N. C. R. R. Co., at that place, and that he had refused to receive it, on the ground of military orders freight, &c.

Afterwards one Scott, a witness for the plaintiff testified that Keisler was not authorized to receive, or refuse freight for the N. C. R. R. Co.

The view of the case taken by the Court renders it unnecessary to set forth more of the facts.

His Honor instructed the jury that the defendant was bound to ordinary diligence in storing and forwarding the

cotton, and that if they should find that it had failed to exercise such diligence, then the plaintiff should recover.

Verdict for the plaintiff; Rule for a new trial; Rule discharged; Judgment and Appeal.

*Fowle & Badger*, for the appellants.
*Phillips & Merrimon, contra.*

PEARSON, C. J. We are of opinion that the evidence, taking it most favorably for the defendant, makes out a case of gross negligence, and that the Judge ought to have instructed the jury that the plaintiff was entitled to a verdict.

When the plaintiff went to Charlotte in April 1864, and found his cotton in the condition it was in, he had a right to "quicken the diligence" of the defendant's employees. As one who puts process into the hands of an officer, may tell him that he has reason to fear the defendant will "slip out of the county" and the matter should be attended to without delay: if this requisition for prompt action be not complied with, and harm comes of the delay, the officer is liable.

The plaintiff had made arrangements by which the cotton would have been received by the N. C. R. R. Co. in two hours; of this he gave the defendant notice, and showed to the employee an order under which the cotton would have been received and shipped to High Point "instanter," and required him to deliver the cotton during that evening. Whether the hands of the defendant were out of the way doing something else, or whether this was a pretext to *exact a bonus of the plaintiff*, is immaterial to the question before us. It was the duty of the defendant, when his diligence was thus quickened by a special request, to have had the necessary hands on the spot, and failing in this, it was gross negligence to refuse to allow the plaintiff to have the cotton moved at his own expense. This refusal, whether upon rail road etiquette, or for other motives, put the defendant in the wrong, and created an absolute duty to make good the assurance then given to the plaintiff to deliver the cotton within three days.

As the plaintiff acted upon this understanding, and went home relying on it, its legal effect was an assurance that the thing would be done; and the defendant cannot escape liability by proof that he offered the cotton to Keisler the receiving and loading *Clerk* of the N. C. R. R. Co., who refused to receive it, saying "they had received a military order requiring government freight to be shipped;" because, in the first place, the defendant was fixed with the responsibility of an insurer, by the absolute promise made to the plaintiff; and, in the second place, there was no proof that this clerk, Keisler, had any control over the matter, or was the right man to apply to. On the contrary, Scott swears that Keisler was merely a loading clerk and had no authority to accept or refuse goods to be carried, and that the employees of the defendant had notice that this was exclusively the business of the witness Scott

Taking all of the evidence, gross negligence is proved. For this reason we do not feel at liberty to express an opinion upon the question so fully argued, *i. e.* whether a rail road company can restrict its liability to cases of gross negligence, by special contract. We are the less inclined to do so in this instance, because the contract sets out special circumstances that might take it out of a general" rule, to-wit: the fact, that "the Government required for its transportation almost entirely the whole equipment of the road, and the damaged condition of the cars, caused by the transportation of troops, munitions of war, etc." As the idea of the exemption of a rail road company from the liability imposed by the common law on common Carriers, is put on the footing of a discharge by special contract, it would seem that the liability cannot be less than that of a bailee to carry for hire, which is for ordinary neglect: for the distinction is, that the one depends on a special, the other on a general contract. And it would also seem that this special contract should be supported by some consideration to take it out of the doctrine of *nudum pactum.* So the question will be, can the mere doing of that which the party is bound to do any how, or subject himself to an action, amount to a consideration; or will it fall under the principle,

that payment of a part of a debt, the whole of which the party is *then and there* bound to pay, is no consideration to support a promise of a discharge of the balance of the debt. These suggestions are thrown out, with no intimation of an opinion, but as " food for reflection," and to show that we have considered the argument with which the Court was favored.

The error of the Judge in leaving a question of law to the jury, is cured by the verdict. " *Craton's case*," 6 Ire. 164.

PER CURIAM.                    Judgment affirmed.