B. & J. K. TERRY v. DANVILLE, MOCKSVILLE AND SOUTH-WESTERN RAILROAD COMPANY.

*Contract, evidence of—Judge's Charge—Correct verdict upon questions of law, cures error of court—Instructions must be asked upon points omitted.*

1. Where a writing does not contain the *entire* contract between the parties, parol evidence of an independent verbal agreement is admissible. The written contract, here, to pay for work on defendant's railroad *after* the grade was lowered, has no bearing upon the issue as to how much the plaintiff is entitled to recover for work done under a verbal contract *before* the grade was lowered.

2. The rule, that an omission of a judge to charge the jury upon a particular point is not error unless asked to do so, is still the law, notwithstanding the provision of THE CODE, § 412 (3) which is in effect that the error alleged need not be put in writing, and may be taken advantage of at any time, even in this court.

3. Where a jury decide correctly a question of law improperly left to them, the verdict cures the error of the court. The legal question of negligence was properly decided by the jury in this case.

(*Doughtry* v. *Boothe*, 4 Jones, 87; *Manning* v. *Jones*, Busb., 368; *Twidy* v. *Saunderson*, 9 Ired., 5; *State* v. *O'Neal*, 7 Ired., 251; *Brown* v. *Morris*, 4 Dev. & Bat., 429; *Hice* v. *Woodard*, 12 Ired., 293; *Arey* v. *Stephenson*, *Ib.*, 34; *Lawton* v. *Giles*, 90 N. C., 374; *Glenn* v. *Railroad*, 63 N. C., 510; *Smith* v. *Shepard*, 1 Dev., 461, cited and approved.)

CIVIL ACTION, tried at Fall Term, 1883, of ROCKINGHAM Superior Court, before *MacRae, J.*

This action was brought on a special contract for work and labor done on defendant's road.

The plaintiffs offered evidence of the following facts, which were not disputed, that the Midland railroad company, and the Danville, Mocksville and Southwestern rail-

road company were building railroads through the county of Rockingham. The defendant's road, being a narrow gauge, crossed the Midland road twice; and by an agreement between the two companies the defendant was permitted by the Midland company to change a part of the Midland line in order to avoid the necessity of crossing twice, and it was agreed between the companies that the defendant company should pay for all the work upon that portion of the line, over and above that which the Midland should have to pay to carry it as they had proposed.

The engineer of the defendant company then proposed to change the grade of that portion of the line, and make it a lower grade than the Midland had fixed upon. This the Midland company agreed to, with the express agreement that the defendant must pay for the change of grade. And it was agreed by the defendant company that the Midland contractors should go on and do the work, and the defendant should pay for it.

The plaintiffs were the contractors on the Midland road. And they offered evidence to establish the further facts that the defendant company contracted with them verbally in July, 1881, to do the work which was necessary to effect the change in the line of the Midland road, and they were directed by the defendant's officer to go on, when they got to the point where the change was to be commenced, and do the work; that they did go on with the work according to the pegs or stakes which were set there by the Midland engineers, and when they had done a great part of the work the defendant changed the grade, reset the pegs, and required a large amount of work to be done, which would not have had to be done, if the pegs had been set for the change of grade before the plaintiffs commenced work.

They offered evidence showing that when they reached the point where the defendant's work was to begin, and after working a few days, they were informed that the de-

fendant intended to change the grade; that they stopped work until they saw the engineer of the defendant, who looked at the work and told them to continue the work and he would lower the grade. He neglected to lower the grade, and they told him that they could not do the work and make the haul at sixteen cents, but would do it at the price his contractors charged, to-wit, twenty cents, and he agreed thereto.

The plaintiffs and defendant then entered into the following written agreement: "August 11th, 1881. Memorandum of an agreement between B. K. and J. K. Terry, and D. M. and S. W. railroad, whereby the said B. K. and J. K. Terry agree to move all earth and rock from the cut between stations 1651 and 1667, and deposit the same on the embankment just westerly of said cut, and for said work the D. M. and S. W. railroad agree to pay the following prices upon the completion of the said work. For earth excavation 20c. per cubic yard; soft rock excavation 35c. per cubic yard; hard rock excavation 85c. per cubic yard. And in addition to the above prices there shall be paid for each yard hauled over 500 feet one cent per cubic yard for every 100 feet over 500 feet."

It was also in evidence that the road was then staked off, and it appearing that there would necessarily be "borrow and fill" the defendant agreed to pay for it; that they had completed the "fill" all but 1,200 yards before the defendant changed the grade, and a change of price was agreed upon between them and the defendant, for the work already done at 20c. per cubic yard, and the defendant promised to pay for it; the delay on the part of defendant to lower the grade caused them to do much unnecessary work, but that it was not their fault and was the fault of the defendant; the unnecessary work done in consequence of the delay of defendant in lowering the grade was worth some fourteen hundred dollars; that an estimate of the work done under

the written contract was made by the engineer of the Mid-
land road at eight hundred dollars, and that it was correct
as far as it went, but the estimate did not include the work
the plaintiffs had put up and had to take down in conse-
quence of the change in the grade, and that the defendant's
engineer made an estimate at six hundred dollars.

The defendant contended that the only contract made be-
tween it and the plaintiffs was the written contract of date
August the 11th, 1881, and it was only liable for the neces-
sary amount of work done by the plaintiffs to effect the
change in the line, which the defendant was to pay for, and
that was less than six hundred and fifty dollars, but the
defendant company was willing for a verdict and judg-
ment to go against it for that amount and no more.

His Honor charged the jury that "if it was by the neg-
ligence of the plaintiffs that they went on and did an un-
necessary amount of work before the grade was changed,
they would not be entitled to recover for the unnecessary
amount of work. But if the defendant's engineer directed
the plaintiffs' engineer to go on with the work when they
reached the point, and did not tell them that there was to
be a change of grade, and the plaintiffs did go on and do
the work which became unnecessary when defendant
changed the grade and reset the pegs, the plaintiffs would
be entitled to recover."

"If in doing the work the plaintiffs *borrowed* any earth
which they ought not to have done, or if they wasted any
earth which they ought not to have wasted, or if they
hauled any dirt which they ought not to have hauled, you
will not allow them for such work. That is the whole case.
You will in any event find the issues in favor of the plaintiffs,
and if upon the evidence you conclude they are only entitled
to six hundred and fifty dollars, assess their damages at that
sum ; but if they did other work for the defendant and de-
fendant agreed to pay them for it, you will say how much,

and add it to the six hundred and fifty dollars, and say you find the issues in favor of the plaintiffs, and assess their damages at whatever you say is the proper amount, and you may give interest if you think proper."

No exception was taken to the charge as given. The jury found all issues in favor of the plaintiffs, and assessed their damages at eighteen hundred and sixty-six dollars and thirty-one cents, with interest from the 15th day of May, 1882.

Thereupon judgment was rendered in behalf of plaintiffs in presence of defendant's counsel, whose attention was called to the fact that judgment was about to be pronounced, and no objection was made to the charge of the court.

Within ten days after judgment the defendant served notice of appeal to the supreme court, and served case on plaintiffs' counsel, who filed objection, and the case was settled by His Honor.

From the case presented by the defendant's counsel, the exceptions are taken to the charge as given by the judge to the jury—the errors assigned being as follows:

1. "In that he failed to instruct the jury as to the proper construction and application of the written contract of August 11th, 1881, in its bearing upon the issue submitted."

2. "In that he failed to instruct the jury upon the legal propositions legitimately presented and insisted upon by the defendant."

3. "In that, having charged the jury that the quantum of the plaintiffs' recovery depended upon the quantum of negligence on the part of plaintiffs or the defendant, he failed to decide the question of negligence himself, and submitted the question of negligence to the jury."

*Mr. J. T. Morehead,* for plaintiffs.
No counsel for defendant.

TERRY *v.* RAILROAD.

ASHE, J. Waiving for the present the question whether the defendant's objections were made in apt time, they having neglected, before the case was submitted to the jury under the charge of His Honor, to call his attention to any of the points presented in these exceptions, we are unable to discover any error in the instructions given, which entitles the defendant to a *venire de novo.*

As to the first ground. of exception, that His Honor did not instruct the jury as to the bearing of the written contract upon the issue, we are somewhat at a loss to comprehend the import of the exception. If the defendant meant that His Honor should have instructed the jury that as the contract was reduced to writing, parol evidence of any verbal contract between the parties was inadmissible, or that the written contract could not be explained, added to or contradicted by parol evidence, while we concur in the proposition if that is what is meant, we do not agree with the defendant in the former. There was in fact nothing for His Honor to charge on this point. For the written contract was an agreement as to the work and its price on the road after the grade was lowered; but there was a verbal contract made in July, and confirmed by subsequent promises on the part of defendant, for the work done before the grade was lowered, which was not included in the written contract, and for which the defendant promised to pay.

When the agreement of parties is reduced to writing, it is a rule of evidence that parol testimony is not admissible to contradict, add to or explain it. For although there be no law requiring the agreement to be in writing, still the written memorial is the best evidence.

But the rule has no application to this case, for the writing is not a memorial of the *entire* agreement. It was only an execution of one part of the agreement, while the other part was left in parol. The contract made in July had reference to the entire work, but that made and evidenced

by the writing referred only to the work to be done after the grade was lowered, and was only in part execution of the entire contract. *Doughtry* v. *Boothe*, 4 Jones, 87 ; *Manning* v. *Jones*, Busb., 368 ; *Twidy* v. *Saunderson*, 9 Ired., 5. See also *Hawkins* v. *Lea*, 8 Lea (Tenn.) 42, where it is held, " When it is not intended that a written contract should state the whole agreement between the parties thereto, evidence of an independent verbal agreement is admissible." This disposes of the first exception.

The second exception, " that His Honor failed to instruct the jury upon the legal propositions legitimately presented and insisted upon by the defendant," is quite as difficult to be apprehended as the first. We find no legal proposition any where presented in the record by the defendant, unless their denial that they ever made any other agreement than that set out in the writing of August, and that they were only liable to pay for such work as was necessary to effect the change in the line of the Midland road, are regarded by them as legal propositions. If so, they are already disposed of by what we have had to say upon the first exception.

But conceding that the written agreement had some bearing upon the issue upon which His Honor had omitted to instruct the jury, and the defendant had presented some legal proposition which His Honor had overlooked in giving his charge to the jury, there were no instructions asked of him by the defendant upon these points ; and it is well settled that where a judge in his charge to the jury omits to instruct them on a particular point, it does not constitute error, unless he is requested to do so. *State* v. *O'Neal*, 7 Ired., 251 ; *Brown* v. *Morris*, 4 Dev. & Bat., 429 ; *Hice* v. *Woodard*, 12 Ired., 293.

If the defendant deemed instructions upon these points material, they should have asked for instructions, and if re-

fused, the question might have been brought to this court for review. *Arey* v. *Stephenson,* 12 Ired., 34.

The principle announced in the above cited cases that an omission of a judge to charge upon a particular point is not error unless asked so to do, is still the law, notwithstanding the enactment of sub-division 3, section 412 of THE CODE, which is as follows: "If there shall be error either in the refusal of the judge to grant a prayer for instructions or in granting a prayer, or in his instructions generally, the same shall be deemed excepted to without the filing of any formal objection."

Prior to this enactment, whenever an exception was taken upon a trial, it was required to be reduced to writing at the time, &c. Section 412, sub-division 2.

The third sub-division of the section was intended to except from the requirement in the second sub-division that the exception must be *taken in writing at the time,* the cases, where the error is assigned in the court's refusal to grant a prayer for instructions, or in granting such a prayer, or in the general instructions given to the jury. But it by no means dispenses with the rule, that instructions must be asked upon points omitted by the court in the charge, and that it is no error to omit these unless asked to charge upon them. The third sub-division only provides that the error assigned in such cases need not be put in writing at the time, but may be taken at any time without writing, even in this court, as was held in *Lawton* v. *Giles,* 90 N. C., 374.

The third and last ground of error assigned is as untenable as the others. That the court committed an error in leaving in his instructions the question of negligence to the jury, may be one of those errors that might be assigned under sub-division three. And taking it to be so, was it such an error as entitles the defendant to a *venire de novo ?*

The evidence in the case was that the unnecessary work done under the contract with the defendant was caused by their delay in lowering the grade of the road. If His Honor had charged the jury upon the question of negligence, as a question of law, upon the evidence before him, he would have been bound to have told them that the unnecessary work done by the plaintiffs was caused by the negligence of the defendant. But he left that question to the jury, and they have decided it as the court must have instructed them, if it had expressed any opinion upon the point. And where a jury decide correctly a question of law improperly left to them by the court, the verdict cures the error of the court and it is no ground for a new trial. *Glenn* v. *Railroad*, 63 N. C., 510; *Smith* v. *Shepard*, 1 Dev., 461.

Our conclusion is there is no error, and the judgment of the superior court of Rockingham is affirmed.

No error.                                              Affirmed.