EVANS v. FREEMAN.

(Filed September 18, 1906).

*Contracts—Collateral Agreements—Parol Evidence—Negotiable Instruments—Endorsements.*

1. The rule that when parties reduce their agreement to writing, parol evidence is not admissible to contradict, add to, or explain it, applies only when the entire contract has been reduced to writing; and where a part has been written and the other part left in parol, it is competent to establish the latter by oral evidence, provided it does not conflict with what has been written.

2. In an action on a note, by which the maker promised to pay the sum of $50, being the purchase-money for the right to sell a stock-feeder, it was competent to show that it was a part of the agreement at the time the note was given that it should be paid out of the proceeds of the sales of the stock-feeder.

3. An endorsement of "All the right, title, and interest" of the payee of a note does not in any way affect its negotiability, and the endorsee is deemed *prima facie* to be a holder in due course if he has possession of the note under such endorsement.

ACTION by J. D. Evans against S. B. Freeman, heard by *Judge T. J. Shaw* and a jury, at the May Term, 1906, of the Superior Court of BERTIE.

Plaintiff sued upon a bond, dated 6 June, 1899, by which the defendant promised to pay to David A. Askew on 15 November, 1900, the sum of fifty dollars, being the purchase-money for the right to sell an automatic stock-feeder ·

in Hertford County. The bond was transferred to the plaintiff by the following endorsement: "For value received, I herewith transfer and assign all my right, title and interest in and to the within note to J. D. Evans, 1 July, 1899. (Signed) D. A. Askew."

Defendant resisted payment of the bond on the following grounds:

1. That Evans was not the owner of the note, and the endorsement to him was a mere subterfuge and sham to evade certain equities of the defendant against the note.

2. That Evans took said note, if at all, after the same had become due, and he was, therefore, fixed with knowledge of defendant's equities against said note.

3. When said note was given it was upon the express agreement and consideration that the payment thereof was to be made out of the proceeds of the sales of the patent right for which it was given; if there were no such sales there was to be no payment; and that if Evans owned the note, he took it after maturity, and therefore with notice.

4. The defendant has paid thereon the sum of $19.50.

Before this Court it was further contended that the endorsement was of such a nature as to destroy the negotiability of the note and to subject it in the hands of the plaintiff, the holder, to all equities and defenses of the defendant, who was the maker; while the plaintiff insisted that the endorsement protected him against the defense set up, as to the mode of payment, because he purchased the note for value and without notice, and it was endorsed to him before it was due. There was evidence tending to show that the note was sold and endorsed to the plaintiff by Askew before its maturity, and also evidence to the contrary, that is, that the bond was seen in the possession of the payee without any endorsement, when it was overdue.

The defendant proposed to show by his own testimony that it was a part of the agreement at the time the note was given

that it should be paid out of the proceeds of the sales of the stock-feeder. The Court refused to admit the evidence, and the defendant excepted.

The defendant's counsel requested the Court to charge the jury as follows: "The transfer on the back of the note is not such an endorsement as raises any presumption in favor of the holder of the note, and one who took it with such an endorsement holds it subject to the condition on which it was held by the original payee as to offsets and equities." The Court refused to give the instruction, and the defendant excepted.

The Court then charged the jury as follows: "1. The holder of a note means the endorsee of the note who is in possession of it. 2. If you believe the evidence, you will find that the plaintiff is the holder of the note in controversy; and if you find this to be true, then there is a presumption that the plaintiff is a holder in due course, as every holder of a note is deemed *prima facie* a holder in due course. 3. If you find from the evidence that the plaintiff is a holder in due course, then the burden is on the defendant to rebut the presumption that it was endorsed before maturity. 4. If the note was transferred after maturity, then the same defenses are open to the defendant against Evans as he would have against Askew; this note is payable in money, and the defendant could not show that it was to be paid in anything else against Askew, and of course not against Evans."

Exception was duly taken to each of the instructions so given by the Court.

The Court submitted the following issue to the jury: "Is the defendant indebted to the plaintiff, and if so, in what amount?" The jury answered: "Yes; in the sum of fifty dollars and interest from the date of the note."

Judgment was entered on the verdict, and the defendant appealed.

*A. P. Godwin* for the plaintiff.
*Winston & Matthews* for the defendant.

WALKER, J., after stating the case: The Court erred in refusing to admit the testimony of the plaintiff in regard to the defense as to how the note should be paid. It is very true that, when parties reduce their agreement to writing, parol evidence is not admissible to contradict, add to, or explain it; and this is so, although the particular agreement is not required to be in writing, the reason being that the written memorial is considered to be the best, and therefore is declared to be the only evidence of what the parties have agreed, as they are presumed to have inserted in it all the provisions by which they intended or are willing to be bound. *Terry v. Railroad,* 91 N. C., 236. But this rule applies only when the entire contract has been reduced to writing, for if merely a part has been written, and the other part has been left in parol, it is competent to establish the latter part by oral evidence, provided it does not conflict with what has been written. In Clark on Contracts (2 Ed.), at p. 85, the principle is thus clearly and concisely stated: "Where a contract does not fall within the statute the parties may at their option put their agreement in writing, or may contract orally, or put some of the terms in writing and arrange others orally. In the latter case, although that which is written cannot be aided by parol evidence, yet the terms arranged orally may be proved by parol, in which case they supplement the writing, and the whole constitutes one entire contract." In such a case there is no violation of the familiar and elementary rule we have before mentioned, because in the sense of that rule the written contract is neither contradicted, added to, nor varied; but leaving it in full force and operation as it has been expressed by the parties in the writing, the other part of the contract is permitted to be shown in order to round it out and present it in its complete-

ness, the same as if all of it had been committed to writing.

The competency of such evidence for the purpose of establishing the other and unwritten part of the contract, or even of showing a collateral agreement made contemporaneously with the execution of the writing, has been thoroughly settled by the decisions of this Court. Indeed, it seems to us that the very question we are now considering has been passed upon by this Court several times. Applying the rule we have laid down, it has been adjudged competent to show by oral evidence a collateral agreement as to how an instrument for the payment of money should in fact be paid, though the instrument is necessarily in writing and the promise it contains is to pay so many dollars. In support of the proposition, as thus stated, we may refer specially to the comparatively recent decisions in *Woodfin v. Sluder,* 61 N. C., 200; *Kerchner v. McRae,* 80 N. C., 219; *Braswell v. Pope,* 82 N. C., 57, and *Penniman v. Alexander,* 111 N. C., 427 (reaffirmed in 115 N. C., 555), which cases seem to be directly in point and to fully answer the objections made by the plaintiff's counsel in his able and skillful argument. Numerous other cases have been decided by this Court in which the application of the same principle has been made to various combinations of facts, all tending, though, to the same general conclusion that such evidence is competent where it does not conflict with the written part of the agreement and tends to supply its complement or to prove some collateral agreement made at the same time. The other terms of the contract may generally thus be shown where it appears that the writing embraces some, but not all, of the terms. *Twidy v. Saunderson,* 31 N. C., 5; *Manning v. Jones,* 44 N. C., 368; *Daughtry v. Boothe,* 49 N. C., 87; *Perry v. Hill,* 68 N. C., 417; *Willis v. White,* 73 N. C., 484; *Perry v. Railroad, supra; Cumming v. Barber,* 99 N. C., 332.

This Court refused to apply the principle in *Ray v. Blackwell,* 94 N. C., 10, and *Moffitt v. Maness,* 102 N. C., 457,

142—5

because the oral evidence tended to contradict or vary the written part of the contract and not merely to add other consistent terms. The question was somewhat discussed, with special reference to our own decisions, in *Cobb v. Clegg,* 137 N. C., 153.

The Court, therefore, erred in excluding the evidence and in withdrawing this defense from the consideration of the jury by its fourth instruction. The charge in other respects appears to be correct.

There is one other matter which requires some attention. The defendant contended that the plaintiff was not a holder in due course, because by the terms of the endorsement he was put on notice of any and all equities and defenses of the maker as against the payee, Askew, the reason being that only the right and title of the payee was transferred and the endorsee acquired no better title under such an endorsement than his endorser himself had, but, *ex vi termini,* only his right and title, which were subject to the defense set up in this action.

There was at one time very strong and convincing authority for such a position, *Aniba v. Yeomans,* 39 Mich., 171, and there was much also said against it, 1 Daniel Neg. Inst. (5 Ed.), sec. 688c. But we think the controversy has finally been settled by the "Negotiable Instruments Law" as recently adopted, Revisal, ch. 54.

Ours is a qualified endorsement, under Revisal, sec. 2187, and while the endorser is constituted a mere assignor of the title to the instrument, it is provided that such an endorsement shall not impair its negotiability. A qualified endorsement may, by the express terms of that section, be made by adding to the endorser's signature the words "without recourse," or any words of similar import. It has been settled in commercial law that a transfer by endorsement of the "right and title" of the payee or an endorser to a negotiable note is equivalent to an endorsement "without recourse,"

and words such as were used in this case are, therefore, in their meaning or "import" similar to such an endorsement, and this is their reasonable interpretation. 1 Daniel, *supra,* secs. 700 and 700a; Norton on Bills and Notes (3 Ed.), 120; *Hailey v. Falconer,* 32 Ala., 536; *Rice v. Stearns,* 3 Mass., 225; Randolph Com. Paper (2 Ed.), secs. 721, 722, 1008; *Goddard v. Lyman,* 14 Pick., 268; *Borden v. Clark,* 26 Mich., 410; Eaton & Gilbert on Commercial Paper, sec. 61.

However the law may have been, it is now true, as it appears from the statute and the authorities just cited, that such an endorsement does not in law discredit the paper or even bring it under suspicion, nor does it in any degree affect its negotiability. The endorsee is supposed to take it on the credit of the other parties to the instrument, Revisal, sec. 2187, though the endorser may still be liable on certain warranties specified in the statute. Revisal, sec. 2214.

This conclusion we believe to be in accord with the intention of the Legislature in enacting the "Negotiable Instruments Law," as the leading purpose was to afford as much protection to the holders of commercial paper as is consistent with a just regard for the rights of other interested parties, and, by freeing its transfer of unnecessary fetters, to promote its easy circulation and to give it greater currency as a medium of exchange.

Our decision on this part of the case is confined to the particular evidence rejected, and does not extend to any other offer of proof made by the defendant.

If the defendant is able to show that the note was endorsed to the plaintiff after its maturity, or that the latter is not in fact a purchaser for value and without notice, his defense will be available to him; but the burden to establish either of those facts is upon the defendant, as the plaintiff is deemed *prima facie* to be a holder in due course if he has possession of the note under the endorsement.

New Trial.