## A. P. WILLIS v. JARRETT CONSTRUCTION COMPANY.

(Filed 9 March, 1910.)

1. Contracts, Written—Inspection—Omission—Parol Evidence.

A written agreement to furnish piles to a railroad company f. o. b. cars, etc., being silent as to which party is to procure or furnish cars for the loading, or how often inspection by the company was to be made, under a written provision that inspection be made, it is competent to show by parol which of the parties was to furnish the cars and how often the piles were

WILLIS *v.* CONSTRUCTION COMPANY.

to have been inspected, as such is not required by law to be in writing, and is not a variance of the written terms of the instrument.

### 2. Same—Place of Delivery.

When in a written contract it appears that the plaintiff agreed to furnish certain piles at an agreed price, and sued upon the contract for the piles sold and delivered, it is competent to show by parol, the instrument itself being silent as to the place of delivery, excepting the expression "f. o. b. cars N. and S. rail," the agreed place of delivery.

### 3. Contracts Entire—Part Performance—Default of Other Party.

One who has violated his contract in such manner as to prevent its fulfillment by the other party may not escape liability under his contract on the ground that the contract was entire and only partly performed by the other party.

### 4. Contracts Entire—Delivery—Weekly Inspection—Construed.

When it is established that, under a contract between the plaintiff and defendant railroad company, the former had sold and was to deliver certain piles to the latter, to be weekly inspected and a certain percentage of the price to be then paid, until the complete performance by plaintiff, when the retained percentage was to be paid, the contract will not be construed as "entire and indivisible," so as to prevent recovery of the contract price for the piles delivered, on the ground that all the piles specified by the contract had not been delivered.

### 5. Contracts—Delivery—Damages—Deductions—Issues, New Trial on One.

The plaintiff having sold to defendant a specified number of piles, which the latter refused to accept, certain creditors of the plaintiff, the owners of the land from which he had cut the piles and the laborers employed to assist therein, sold some of the piles, with plaintiff's knowledge, and applied the proceeds thereof to plaintiff's debt to them: *Held*, (1) the plaintiff is entitled to recover of the defendant the contract price of the piles actually delivered, less the proceeds of the sale of the piles by his creditors, which was applied to his debts to them; for, otherwise, he would, as to tne amount of such proceeds, be twice paid; (2) there being error in the charge of the lower court in this respect, the verdict on the issue of damages will be set aside, and a new trial thereon will be had.

APPEAL from *Guion, J.,* at October Term, 1909, of CRAVEN.

Issues were submitted to the jury, and, with their responses, are as follows:

1. Did the plaintiff perform, on his part, his contract, or was he ready, able and willing to perform the same? Answer: Yes.

2. Did defendant perform the contract on its part, or was it ready to perform the same? Answer: No.

3. If the plaintiff was able and ready to perform his part of

the contract, was he prevented from performing the same by the refusal of defendant to perform its part of such contract? Answer: Yes.

4. Did plaintiff deliver or tender to the defendant 260 piles in accordance with the terms of the contract and agreement between plaintiff and defendant, as alleged? Answer: Yes.

5. If not, how many of said piles were so tendered? (Not answered.)

6. Were said piles so delivered, in accordance with the specifications required to pass inspection, under the terms of the contract? Answer: Yes.

7. Did defendant wrongfully fail and refuse to accept such piles so tendered or delivered? Answer: Yes.

8. After the execution of such contract, did plaintiff voluntarily abandon the same for any cause? Answer: No.

9. What damage, if any, has plaintiff sustained? Answer: $1,105.

The written contract between plaintiff and defendant was as follows:

NEW BERN, N. C., 5 August, 1907.

Please deliver the following piling as per Standard R. and P. S. Specifications: 400 black cypress piles 45′ long at 10 cents per lineal foot f. o. b. cars at Norfolk and Southern rail. Above subject to inspection at Vanceboro. Payments to be made as follows: 80 per cent upon inspection and after same are loaded and B/L turned over to us. Balance to be paid when whole number are shipped. Above order to be filled in 30 days.          (Signed)  A. E. KINLOCH.

Accepted: A. P. WILLIS.

It was admitted that the abbreviations, "Standard R. and P. S. Specifications," meant "Standard Raleigh and Pamlico Sound Specifications," and "f. o. b." meant "free on board." It was also admitted that A. E. Kinloch was the representative of the defendant; that "45′ long" meant "45 feet long." One of the controverted questions of fact was, who was to furnish the cars to receive the piles, and how often the inspection was to be had, the plaintiff contending, and supporting his contention by evidence, that the defendant agreed to furnish the cars and have weekly inspections. This the defendant denied. Another controverted question arises upon the proper interpretation of the words of the contract determining the place of delivery, to wit, "at Norfolk and Southern rail." The plaintiff contended that this meant, and was agreed to, on or about Vanceboro, and the defendant contended these words, in con-

nection with other words in the contract, meant *at* Vanceboro. The plaintiff delivered 260 piles, which he contended came up to the specifications, and they were refused by the defendant, and that the defendant refused to furnish cars as agreed upon, or to have the piles inspected.

From the judgment upon the verdict the defendant appealed to this Court.

*E. M. Green* and *R. A. Nunn* for plaintiff.
*L. I. Moore* for defendant.

MANNING, J., after stating the case: The sixty-three errors assigned by the defendant in the record can be fully considered under the following heads: 1. Exceptions taken to the admission of parol evidence of the agreement of the defendant to furnish cars on which plaintiff was to load the piles, and to make weekly inspections at Vanceboro of the piles loaded on the cars. 2. Exceptions taken to the admission of evidence that defendant designated the places of delivery upon plaintiff's demand, and made clear the words in the contract, "at Norfolk and Southern rail," and that plaintiff delivered the piles at places within the distance designated by defendant, and so notified it. 3. Exceptions taken to the refusal of the learned trial judge to hold that the contract was an entire contract, and that, as plaintiff had not delivered the 400 piles, he could not recover. 4. Exceptions taken to the rule laid down as the proper measure of damages.

We will consider the exceptions in the order of the above grouping.

It is well and definitely settled by numerous decisions of this Court that while parol evidence is inadmissible to contradict, add to, or explain the written memorial of the agreement between two or more parties, yet such evidence is admissible "where a contract does not fall within the statute; the parties may, at their option, put their agreement in writing, or may contract orally, or put some of the terms in writing and arrange others orally. In the latter case, although that which is written cannot be aided by parol evidence, yet the terms arranged orally may be proved by parol, in which case they supplement the writing, and the whole constitutes an entire contract." *Evans v. Freeman,* 142 N. C., 61, and cases cited; Clark on Contracts (2 Ed.), p. 85. The written memorial of the agreement between the plaintiff and defendant is silent as to which party is to procure or furnish the cars on which the piles were to be loaded and how often the inspections were to be made, and it was competent to admit parol evidence of the oral agree-

ment between them as to these two matters. A reading of the evidence shows that the learned trial judge admitted parol evidence clearly within the rule, and the exceptions of the defendant, contained in this group, cannot be sustained.

The exceptions embraced in the second group: The written agreement uses the words, "f. o. b. cars at Norfolk and Southern rail." The defendant contends that the word *"rail"* means established siding or station of the Norfolk and Southern Railroad Company. We cannot see that the word is capable of this interpretation, unaided by parol evidence. It would seem to mean, unaided, the iron rail of the company's track. The word is not found in Black's Law Dictionary, nor in Words and Phrases, judicially defined, except in connection with the word "all," as "all rail," used in directions for transportation. The meaning given by the lexicographers is, "a strip of timber or metal used generally for wheels to run upon," corresponding with popular acceptation of the word. It certainly does not mean, unaided by evidence of the particular meaning intended by the agreement of the parties, an established siding or station. With this word used in the contract, as fixing the location of the delivery of the pile, capable of covering every point on the line of the Norfolk and Southern Railroad, the plaintiff requested the defendant to locate more definitely the places on the railroad at which delivery would be accepted. The defendant did so, and the plaintiff offered evidence of delivery at those places. The jury was fully instructed by his Honor upon the matters in difference on this question, and its verdict establishes the fact of delivery, by the plaintiff, at the places designated by the defendant. We overrule the exceptions of the defendant presented in this group.

Third group. Exceptions taken to the refusal of the trial judge to hold that the contract was an entire contract, and that as plaintiff had not delivered the 400 piles, he could not recover for the 260 piles delivered. In considering these exceptions, we must accept the contract as established by the verdict of the jury. The contract so established embraced other stipulations than those embraced in the writing, to wit, that the defendant was to furnish the cars and make weekly inspections. It follows therefrom that there were to be cars loaded by plaintiff each week and inspections each week, and payment of the percentage specified in the writing each week, until the complete performance of the contract by the plaintiff, when the retained percentage should be paid. The performance of the contract by the plaintiff was to be in installments, and payments to be made likewise—*toties quoties*. The evidence and the verdict establish the fact that plaintiff was ready, able and willing to

perform his contract; that defendant failed to perform its part of the contract by failing, and refusing, when notified by plaintiff, to furnish cars on which plaintiff was to load the piles; and that such failure by the defendant prevented plaintiff from performing his part of the contract. The act of the defendant was not only inconsistent with, but a violation of, the duty imposed upon it by the contract.

We do not understand the law to compel one of the parties to a contract to proceed with his performance until completed, where the other party has violated the contract by doing some act in violation of the duty imposed upon him, and indicating a purpose not to perform, and shield himself from liability by pleading the failure of the other party to entirely perform the contract. In *Dula v. Cowles,* 52 N. C., 290, *Pearson, C. J.,* speaking for this Court, said: "The principle is this, where a contract is *entire,* and not made divisible by its terms, one of the parties cannot take advantage of his own default, either from *laches* or from a willful refusal to perform his part, for the purpose of putting the contract out of his way, so as to enable him to maintain *assumpsit* on the common counts, and thereby evade the rule; that while the special contract is in force, general *assumpsit* will not lie, and the contract is considered to remain in force until it is rescinded by mutual consent, or until the opposite party does some act, *inconsistent with the duty imposed upon him by the contract,* which amounts to an abandonment. This is as plain as we can find language in which to express the principle." In the present action, the plaintiff seeks to recover only the contract price of the 260 piles actually delivered by him, less the cost of loading on cars, found by the jury to be 25 cents per pile; he does not seek to recover any damages for the 140 piles undelivered by reason of the defendant's breach of contract. It is this demand of the plaintiff that the defendant seeks to defeat by this contention, that the contract is for the delivery of 400 piles, is an entire contract, and the 400 not being delivered, the plaintiff can recover nothing, the defendant not having used any of those delivered. The general rule, stated in *Cutler v. Powell,* 2 Smith L. C., 1, quoted with approval by this Court in *Tussey v. Owen,* 139 N. C., at p. 462, and in many of its decisions, is not applicable to the present case. The plaintiff did not willfully refuse, without legal excuse, to complete the performance of his part of the contract. In commenting upon the inclination of the courts to relax the rigor of the common-law rule, allowing no recovery upon special unperformed contracts, and in construing them to be entire contracts, *Smith, C. J.,* speaking for this Court in *Chamblee v. Baker,* 95 N. C., 98, said, quoting from *Gorman*

*v. Bellamy,* 82 N. C., 496: "Accordingly, restrictions are imposed upon the general rule, and it is confined to contracts entire and indivisible, and when by the nature of the agreement, or by *express provision, nothing is to be paid till all is performed.*" *Wooten v. Walters,* 110 N. C., 251. Applying this rule of law, which has been approved in many decisions of this Court, the contract between plaintiff and defendant, as established by the verdict, is not "entire and indivisible," and there was no error in the refusal of his Honor to so instruct the jury.

The fourth group of exceptions contains the exceptions taken to the measure of plaintiff's recovery. In arriving at this, we think, the piles having no market value, it was proper for the jury to take the contract price, as they found that the piles delivered came up to the specifications, and to deduct therefrom the cost of loading. His Honor so charged the jury. It appeared in the evidence, and of this there seems to be no contradiction, that after the 260 piles were delivered and the defendant had declined to accept any of them, the landowners from whose land plaintiff had cut some of them under contracts of purchase, and who were not paid by plaintiff, and other persons who had aided plaintiff in cutting or hauling them, and who had not been paid, sold some of the piles and applied the proceeds to plaintiff's indebtedness to them on these several accounts; and this was done with the knowledge of the plaintiff. As the purchase price of the standing timber, the cutting and hauling of the piles, each entered into the cost, the amount received for the piles so sold and applied to plaintiff's indebtedness in performing his contract ought to be applied to reduce the amount of plaintiff's recovery. Otherwise, this would be compelling defendant to pay a second time these amounts to the plaintiff. As plaintiff received the benefit, with knowledge, of the property of defendant so sold, he ought not again to recover this sum from the defendant. Stated in different language, the plaintiff sues to recover the contract price of 260 piles, upon the theory that he had delivered these and *pro tanto* performed his contract; that delivery being complete, the piles became the property of defendant, and it owed the contract price. The plaintiff subsequently receives the benefit of the proceeds of the sale of some of these piles, the property of the defendant; he ought, therefore, to be required to credit such sum as a payment by defendant, and have judgment for the balance. According to the evidence, there seems to have been no market value for the piles. This view seems to have been overlooked by his Honor in his clear and exhaustive charge.

The finding of the jury to the 9th issue will be set aside and new trial had only upon that issue, in order that the contract price of the piles, fixed at $1,105, be reduced by the amount received for those sold for the benefit of the plaintiff. We find no other error in the trial. The defendant will pay the costs of the appeal.

Partial new trial.