B. A. SELLARS and others, Administrators of THOMAS SELLARS, *v.* THOMAS D. JOHNSON.

When the terms of a contract are in writing, or otherwise ascertained, the construction of the contract is for the Court and not for the jury. Hence, where it appeared that a person having pork to sell in the year 1863, wrote to the buyer as follows: "Owing to the great fluctuation in Confederate currency, I prefer not selling for that money. Therefore let me know what you will pay in N. C. bank notes, or check on the Cape Fear Bank at Greensboro'," and the buyer took the pork, and sent a check in the following words:

"YANCEYVILLE, N. C., 3rd Dec., 1863.
$3688. Cashier of the Bank of Cape Fear, Greensboro', N. C., pay to the order of Thomas D. Johnson, thirty-six hundred and eighty-eight dollars.          (Signed,)     JOS. J. LAWSON, Cash'r.,
and endorsed " Pay Thomas Sellars or order.
          (Signed,)     THOMAS D. JOHNSON."

*It was held,* that the contract did not require the buyer to send a check payable in N. C. bank notes, and the check he sent was a compliance with the terms of it.

If a seller receive a check drawn on a bank, which is endorsed to him, and which he might have refused as not being in accordance with his contract, but kept it, presented it to the bank for payment, and sued upon it, instead of repudiating it and returning it to the buyer, it amounts to an acceptance of the check in satisfaction of the article sold, and the liability of the buyer is then only upon his endorsement.

The case of *Haight* v. *Grist,* 64 N. C. Rep. 739, cited and approved.

This was an action of assumpsit under the former system tried before his Honor *Tourgee, J.,* at the Fall Term, 1869, of the Superior Court of RANDOLPH County. The plaintiffs declared in three counts. 1st, upon a check, in the following words and figures :

"BANK OF YANCEYVILLE,

$3688.          *Yanceyville, N. C., 3d Dec.,* 1863.

Cashier of the Bank of Cape Fear, Greensboro', N. C., pay to the order of Thomas D. Johnson, thirty-six hundred and eighty-eight dollars.

No. 2262.          JOS. J. LAWSON, Cashier.

With the following endorsement—Pay Thomas Sellars or order.          THOMAS D. JHONSON."

2d. For 1844 lbs. pork, sold and delivered by the plaintiffs' intestate to the defendant at $2 per lb. in North Carolina money.

3d. Upon a *quantum valebat* for 1844 lbs. pork sold and delivered by the plaintiffs' intestate to the defendant on or about the 2d December, 1863.

The facts as they appeared on the trial will be found sufficiently stated in the opinion of the Court. The jury under the charge of his Honor found a verdict for the defendant, and from the judgment rendered thereon, the plaintiffs appealed.

*Gorrell* for the plaintiff.

*Scott* and *Hill* for the defendant.

READE, J. Where the terms of a contract are in writing, or otherwise ascertained, the construction of the contract is for the Court, and not for the jury. All that passed between the parties in this case was in writing, and all the writings were in evidence except a letter from the defendant to the plaintiff, in regard to which there was contradictory evidence. If, therefore, that letter would alter the contract as it ap-

pears from the other writings, then its contents would have been a question for the jury, but we are of the opinion, that taking its contents to be as alleged by the plaintiff, it would not alter the case. The case may be considered, therefore, as if all the evidence of the contract was in writing, and the terms ascertained.

The plaintiffs' intestate wrote to the defendant as follows:

DECEMBER 2D, 1863.

*Dear Sir:* I send you about nineteen hundred pounds of pork to your request. Please give me a check on the Bank of Cape Fear, at Greensboro', for the pork, at two dollars per pound, by the boy.

(Signed:)            THOMAS SELLARS.

The defendant received the pork, and sent to the plaintiffs' intestate, by the boy, the following check:

BANK OF YANCEYVILLE,

*Yanceyville, N. C., 3d December,* 1863.

$3688.    Cashier of the Bank of Cape Fear, Greensboro', N. C., pay to the order of Thomas D. Johnson, thirty-six hundred and eighty-eight dollars.

(Signed:)            JOS. J. LAWSON, *Cash'r.*

The said check was endorsed as follows:

Pay Thomas Sellars or order.

(Signed:)            THOMAS D. JOHNSON.

The question is, did the defendant comply with the letter of the plaintiffs' intestate?

We think he did, in letter and spirit.

But the plaintiff says, that, admitting it to be so, if the letter and check were all, yet, there are other portions of the correspondence which explain the letter and check, and show that the defendant was either to pay N. C. bank notes, or send a check payable in N. C. bank notes. And he relies upon the following letter:

NOVEMBER 17TH, 1863.

*Mr. Thos. D. Johnson:* If you wish to buy a lot of pork,

let me know forthwith. * * * * Owing to the great fluctuation in Confederate currency, I prefer not selling for that money. Therefore, let me know what you will pay in N. C. bank notes, or a check on the Cape Fear bank at Greensboro'.

(Signed:) THOS. SELLARS.

The plaintiff insists that the proper construction of this letter is, that the defendant was to pay in N. C. bank notes, or give a check payable in such notes. We do not think so. So far from its being required that the check should specify the funds in which it should be paid, it might have been properly rejected if it had. We do not know, nor is it necessary to enquire, why Sellars wanted a check on the bank. It may be that he thought he could at some time make the bank pay coin; or that he could trade it to some person who owed the bank; or otherwise use it to advantage; at any rate he proposed a simple check upon the bank, and just such a check was sent him.

The plaintiff further insists, that the defendant's letter in answer to the above, shows that the check was to be for N. C. bank notes.

That letter was lost and contradictory evidence was given as to its contents. A witness for the plaintiff testified that the letter promised to " give $2 per pound in N. C. money." If this would make any difference, supposing it to be true, then it ought to have been submitted to the jury to determine its contents. But we do not think it would alter the case. We must therefore consider the case as if that letter was as testified to by plaintiff's witness, although we are satisfied both from what was testified to by other witnesses, and by the answer of the plaintiffs' intestate thereto it was not. But we say it makes no difference, because if it were so, yet the plaintiffs' intestate, in two subsequent letters, to-wit: 26th November and 2nd December, varied the terms back again to a simple check on the bank—such as was sent to

him by the defendant. In answer to the letter which was lost, the plaintiffs' intestate wrote to the defendant as follows:

NOVEMBER 26TH, 1863.

*Mr. Thomas D. Johnson:* In answer to your note, I can say, if nothing prevents, I shall send you on next Thursday or Friday, 3rd or 4th of December, some 18 or 19 hundred pounds of pork, and accept your proffered terms of the check.

(Signed:)            THOS. SELLARS.

Nothing is said in this letter about the defendant's having offered in his letter to pay in N. C. money as testified to by the plaintiffs' witness, but the contrary, that he had proffered to pay in a check. And the plaintiffs' intestate said he would send the pork and take the check.

And again in his letter of 2d December, accompanying the delivery of the pork, he says, " please give me a check on the Bank of Cape Fear." And the defendant did give him a check. So that, no matter what the defendant may have offered to do theretofore, in the last letter, he strictly complied with the last terms offered by the plaintiffs' intestate, and with his first terms as well.

It is true, his Honor did not decide the case precisely upon this ground, but, as we understand his decision, it was, that no matter what had been the understanding of the parties before the pork was sent, yet, if the plaintiffs' intestate received the check, and kept it, and presented it to the Bank for payment and sued upon it, instead of repudiating it and returning it to the defendant, that this amounted to an acceptance of the check in satisfaction for the pork, and that the defendant was then only liable upon the check as endorser.

We do not think that the defense was driven to that view of the case, because, as we have said, we think the contract throughout was that the defendant was to pay in a check; but still, we think his Honor was right, even in the view of the case which he presented.

It appeared in the case, that neither the Yanceyville Bank which drew the check, nor the defendant had any funds in the Cape Fear Bank except Confederate treasury notes, and as it was clearly understood that plaintiffs' intestate was not to receive such notes, it was a fraud in the defendant to send the check.

Suppose it be so, still the defendant's liability is not upon the original contract for the pork, but upon his endorsement after the plaintiffs' intestate had accepted the check. And the plaintiffs' intestate might have presented the check to the Bank for payment in bank notes, or even in coin, and upon refusal and protest and notice, might have sued the defendant upon his endorsement.

The plaintiff's counsel properly admitted in this Court that if the check was a compliance with the contract, then it ought to have been presented within a reasonable time, and the defendant notified of its non-payment; and that this was not done.

The objection that the check was not stamped, was decided at the last term of this Court, 64 N. C. R. *Haight* v. *Grist,* 739. The United States Rev. Act forbidding unstamped instruments to be used in evidence, &c., is to be administered in the U. S. Courts only.

There is no error.

PER CURIAM.                    Judgment affirmed.