GATLIN v. SERPELL.

(Filed October 11, 1904).

LOGS AND LOGGING—*Contracts.*

> Where a person contracts to sell timber at $1.50 a thousand feet, to be paid for as cut, except a stipulated amount was to be paid before the cutting should begin, it did not constitute an absolute sale of the timber, and a subsequent contract that certain burnt timber might be cut at a lower price so altered the original price as to make the purchaser liable for the lesser price for the burnt timber cut under the second contract.

ACTION by R. H. Gatlin and wife against G. Serpell, heard by *Judge Frederick Moore* and a jury, at April Term, 1904, of the Superior Court of EDGECOMBE County. From a judgment for the plaintiff for less than the relief demanded, he appealed.

*W. A. Dunn & Son* and *G. M. T. Fountain,* for the plaintiffs.
*George Cowper,* for the defendant.

MONTGOMERY, J. This action was brought to recover of the defendant the amount of $3,709.70, alleged to be due as a balance under a contract concerning the sale of timber upon the land of the plaintiff, entered into between the plaintiff and the defendant on the 28th day of January, 1898. It is admitted on all sides that the amount claimed by the plaintiff is due, unless the contract of January 28, 1898, is modified as to the price the defendant was to pay for the timber per thousand feet by a contract subsequently made between the parties under their seals in November, 1900. If the contract of 1898 was modified in the respect mentioned above by the one of 1900, then it is admitted that the defendant owes the plaintiff only $209.70. The contention of the plaintiff is that while the latter contract recites a

consideration moving the plaintiff in its execution, yet the recited consideration is, neither in law nor in fact, a valuable consideration, and that the seals are only a presumption of a consideration, and that that presumption is overcome by proof contained on the face of the contract itself. The original contract (of 1898) seems to have been drawn with care. It does not amount to an absolute sale of the timber on the land, the title to the timber did not at once pass to the defendant. No one can read it and arrive at the conclusion that the defendant had the right to take possession of the timber and dispose of it to others as he might see fit to do. In the first clause of the original contract the consideration of one dollar is recited, and the plaintiffs declare that they "have contracted to sell and convey and to make any and all transfers and assignments, releases and conveyances which may be necessary to convey and transfer unto the said party of the second part or his assigns all the sound merchantable timber now standing and growing upon the several ·tracts of land particularly described in the schedule hereto attached." In consideration therefor the defendant agrees "for the purpose of paying the purchase-money for the said timber hereby covenants and agrees to and with the said parties of the first part that he will pay to the said P. E. Gatlin, or her assigns, as hereinafter set forth, the sum of $1.50 for each and every one thousand feet of said timber to be cut as hereinafter set forth." The defendant further agreed that he would begin to cut the timber within three years from the date of the contract unless he should be prevented from reasonable causes, in which event two years more were to be allowed him to begin the cutting, and that he would cut not less than 3,500,000 feet during each year until the entire timber should be cut from the land. There was a further provision in the contract which gave to the defendant, in case he did not begin to cut the timber as pro-

vided, an option that he might purchase and take title to the land set forth in the schedule, the purchase-price being $45,000. There was a further agreement between the parties that the defendant was to pay to Mrs. Gatlin, or her assigns, $5,000 upon the execution of her contract, and $5,000 on the 28th January, 1899, and the like amount on the 28th January, 1900, making in all the sum of $15,000, which said amounts so paid "shall be held by the said P. E. Gatlin, or her assigns, without interest, to be applied to the price of the timber as the same shall be cut. It is understood and agreed between the parties that if the party of the second part shall begin to cut the timber before the second and third payment of $5,000, as each shall become due as aforesaid, then the said payment or payments succeeding such beginning shall not be paid, but the monthly payments as hereinafter provided for shall be made in lieu thereof; settlements to be made, in respect to the quantity cut, on the 15th day of each month unless prevented by some unavoidable accident, in which case a reasonable time is to be given for said settlement. Said amounts due for timber cut as aforesaid shall be deducted from the several sums of $5,000 paid and to be paid as aforesaid; after the said sum of $15,000 shall have been exhausted in timber cut from the land, the timber thereafter cut shall be accounted and paid for at the said rate of $1.50 per one thousand feet on the 15th of each month as aforesaid." Another provision in the contract, important in its bearing upon this litigation, and throwing light upon the intent of the parties, is in the following words: "It is further agreed, understood and stipulated by and between the said parties that if the said party of the second part or his assigns shall not have elected to take title to the said land at the end of the said term of three years, then he or they may at the end of the said term of two years, provided that he or they may not have been able to

begin cutting said timber, take title to the said land with the exceptions aforesaid upon the same terms as hereinbefore set out."

The defendant did not avail himself of the privilege of purchasing the land, but in good time began to cut the timber, and the purchase clause of the contract is mentioned by us only to show that there was no absolute sale of the timber. The contract, reduced to its simplest terms, was that the defendant should have the right to cut, and was compelled to cut at the rate of 3,500,000 feet a year, all the timber upon the land, the timber to be paid for as it was cut and half-monthly. The payments amounting to $15,000 to Mrs. Gatlin before the defendant began to cut the timber, were simply a guaranty of ability and good faith on the part of the defendant to carry out his part of the contract. It was not to be applied, nor any part of it, as a present cash payment as the purchase-money for the present title to the timber, but to be applied as the timber was cut and measured in payment of the same. The last provision in the contract which we have quoted shows that the plaintiff did not intend that the defendant, after his deposit of $15,000 had been exhausted, should be allowed to continue to cut and market the timber as if he owned the title to it. That clause required of him that he should make semi-monthly reports of the cutting of the timber and settlements for the same at those times; and when the $15,000 should have been exhausted in such settlements and payments he should still be compelled to continue the manner of making returns and settlements, and, in case he did not, his right to cut another stick of timber on the premises would cease and be determined. So, we conclude that under the original contract there was no out-and-out sale of the timber to the defendant. He had only the right to cut it and pay for it as he cut it, at a stipulated price per thousand feet. The option to purchase he did not avail

himself of. It makes no difference that the agreement to sell the timber described the timber as "that now standing and growing on the land." It was not to be paid for until it was cut and measured. Suppose the whole of the timber had been burned or destroyed before the defendant began to cut it, could it be contended with any show of reason that he would have owed the plaintiff the value of the timber?

The second contract (of 1900) it is agreed, as we have said, modified the original one in respect to the price to be paid for the timber per thousand feet if there was a consideration moving the plaintiff in its execution. The second contract had its existence because of the injury to the timber on one thousand five hundred or two thousand acres of the land described in the contract by forest fires. In August, 1900, before the defendant began to cut timber in January or February, 1901, the fire occurred, and in November following the fire the second contract was made. In the preamble the injury by fire to the timber is set out, followed by the declaration that unless it (the timber) should soon be cut and removed it will be a total loss to the plaintiffs, and that they desire to make their loss which had resulted from said fire as small as possible. It is then provided: "That the said Gatlin and wife, in consideration of the premises, and the agreement upon the part of the said Serpell to cut and remove all the said sound merchantable timber trees from the above-described territory of land—no timber to be considered unmerchantable on account of the recent fire—have contracted and agreed, and by these presents do contract and agree, that said Serpell may cut and remove therefrom seven millions of feet of timber at the price of one dollar per thousand feet, instead of one dollar and fifty cents as agreed upon in the original contract, paying the last-named sum or price for all cut therefrom in excess of the amount named, seven million feet."

It seems scarcely debatable that the facts set forth in the second contract did not provide a valuable consideration to the plaintiffs and were not greatly beneficial to them.   Under the first contract the defendant might have left the burned timber to be cut last, and that being so, both by the evidence and the recital in the contract, the burned timber would have become worthless before the defendant would have been compelled to cut it under the original contract.   And the plaintiffs seeing that, and acknowledging it in the second contract, entered into the second agreement by which they got a fair price for the burned timber, the value of which they would have lost if the defendant had exercised the privilege he had to cut the unburned timber first.

But, besides, the plaintiffs knew that the defendant was cutting timber from the burned territory, amounting to seven million feet, and was making reports of the same according to the terms of the contract.   He did not specify the price, that was agreed upon in the contract and could be determined by a mathematical calculation; and the plaintiffs, making no inquiry about the price and knowing that the defendant was cutting burned timber and regularly reporting the quantities cut, for a long time, will be deemed to have acquiesced.

Judgment was rendered in the Court below for $208.09, and the same is

Affirmed.

CONNOR, J., did not sit.