This action was brought to recover damages of the defendants for entering upon land and unlawfully taking possession of and detaining certain timber thereon. The defendants "bargained and sold and conveyed" to the plaintiff certain timber described in the contract or conveyance, with the right and privilege to cut and remove the same within five years from 5 April, 1909. While the contract does not so state, the defendants, in their answer, allege that plaintiff was required "to cut the timber continuously after once beginning to cut, until the cutting of the same should be completed, unless while cutting the timber the price of lumber should decline, so that he could not cut the timber at a profit," and that said agreement was omitted from the contract by the mutual mistake of the parties or by the mistake of the defendants and the fraud of the plaintiff, and that plaintiff further promised to put up a guarantee fund of $1,000 or give a note for that amount to one James Moore, who held a mortgage on the land, to insure the full and faithful performance of the contract. This statement of facts, with the issues and answers thereto, will sufficiently explain the matters in controversy.
The following verdict was rendered by the jury:
1. Did the defendants execute a contract with plaintiff to sell him the timber described in the complaint, as alleged therein? Answer: Yes. *Page 307 
2. Was there an agreement between the plaintiff and the (382) defendant, before the execution of the written contract, that the plaintiff would cut the timber described in the complaint continuously, after once beginning to cut, until the cutting of the same was completed, unless while cutting the same the price of lumber should decline so that he could not cut the said timber at a profit, as alleged in the amendment to the answer? Answer: Yes.
3. If so, was such agreement to continuously cut such timber omitted from the contract by fraud of the plaintiff, or by the mutual mistake of the plaintiff and the defendants? Answer: Yes.
4. Did plaintiff, at the time of the verbal contract, agree to pay to the defendants the sum of $1,000 as security or guaranty for the proper cutting of the timber described in the complaint, and for the full performance of the contract between the plaintiff and defendants? Answer: Yes.
5. Did plaintiff, at the time of and contemporaneously with the execution of the written contract, agree with defendants that he would give to Mr. James Moore a note for $1,000, which would be as satisfactory to the said Moore as a deposit of $1,000 in money, as a guarantee for the performance of the terms of the contract between plaintiff and defendants, and that failing to give such note to the said Mr. Moore, he would desist from cutting defendants' timber and remove his mills from their lands? Answer: Yes.
6. Did plaintiff give such note to the said James Moore? Answer: No.
7. Did defendants waive the giving of such note? Answer: No.
8. Did plaintiff suspend cutting and paying for defendants' timber after he had begun to cut the same, in violation of his agreement with defendants? Answer: Yes.
9. Did plaintiff remove from defendants' lands timber cut thereon before paying defendants for the same? Answer: No.
10. Did plaintiff cut stumps higher than twenty-four (24) inches; or did he leave logs lying in the woods; or timber in the tops of trees; or leave timber standing scattered over places partly cut (383) over, in violation of the contract with defendants? Answer: Yes.
11. If plaintiff violated the contract in any or all of the respects mentioned in the preceding issue, what amount of damages in money did the defendants sustain thereby? Answer: Six dollars and 75/100 ($6.75).
12. Did plaintiff negligently permit fire to be communicated to defendants' lands and thereby cause damage to defendants' timber, wood, undergrowth, etc.? Answer: No. *Page 308 
13. If your answer to the preceding issue shall be "Yes," what amount of damages did defendants sustain thereby? No answer.
14. Did defendants wrongfully and unlawfully refuse to allow plaintiff to reenter upon their lands and to resume the cutting of their timber under said contract, after he had suspended the cutting of the same? Answer: No.
15. If your answer to the preceding issue shall be "Yes," what damage did plaintiff sustain thereby? No answer.
Judgment on the verdict for the defendants, and plaintiff appealed.
After stating the case: The defendants allege that there was a stipulation as to the manner of cutting the timber which was omitted from the contract by mutual mistake or by the fraud of the plaintiff inducing a mistake on the part of the defendants. But we do not find in the record any evidence of fraud, and as the jury, in answer to the third issue, have found that there was fraud or mutual mistake, without designating which of the two, we are unable to tell whether their answer was based upon the fraud or the mistake. The court submitted the question of fraud to the jury against an express prayer of the plaintiff that there was no evidence of fraud, and consequently we have an erroneous finding upon the third issue. The jury might have found that there was fraud and no mistake, and yet, misled by the erroneous (384) ruling and instructions of the court, have given the answer, which is fully responsive to the issue. This error so permeates the entire case that it is sufficient of itself to require a new trial. It makes no difference that the alleged agreement was made, unless there was fraud or mutual mistake, for which the contract will be corrected and made to record the truth. There was also error in the rulings upon the fifth issue, as evidence was admitted, over plaintiff's objection, of the agreement as to the deposit of $1,000 or the giving of a note of like amount to James Moore, as a security for the faithful performance of the contract. It evidently tended to vary the contract materially, and even to contradict it.
It was proposed by it to show an oral agreement, not inserted in the contract, which, if broken by the plaintiff, would terminate the timber contract and divest the plaintiff of all rights thereunder. Where the law does not require the contract to be in writing and it was not intended that the written instrument should state the whole of the agreement between the parties thereto, but that a part thereof should rest in parol, *Page 309 
the latter part may be proved, if it does not materially vary or contradict that which has been written, but is consistent therewith. The rule is thus stated in Clark on Contracts (2 Ed.), at p. 85: "Where a contract does not fall within the statute, the parties may, at their option, put their agreement in writing, or may contract orally, or put some of the terms in writing and arrange others orally. In the latter case, although that which is written cannot be aided by parol evidence, yet the terms arranged orally may be proved by parol, in which case they supplement the writing and the whole constitutes one entire contract." Commenting on this passage, in Evans v. Freeman, 142 N.C. 61, we said: "In such a case there is no violation of the familiar and elementary rule we have before mentioned (against varying or contradicting a written agreement), because in the sense of that rule the written contract is neither contradicted, added to, nor varied; but leaving it in full force and operation as it has been expressed by the parties in the writing, the other part of the contract is permitted to be shown in order to round it out and present it in its completeness, the same as if all of it had been committed to writing." Numerous cases in this (385) Court sustain this rule. Cobb v. Clegg, 137 N.C. 153; Walker v.Cooper, 150 N.C. 129; Typewriter Co. v. Hardware Co., 143 N.C. 97;Evans v. Freeman, 142 N.C. 61; Walker v. Venters, 148 N.C. 388;Basnight v. Jobbing Co., ibid., 350; Woodson v. Beck, 151 N.C. 144. But the evidence admitted in our case does not fall within the well-settled rule, as it essentially varies and directly contravenes the written contract, incorporating in it a clause which, in a certain contingency, would nullify or destroy it. This cannot be done. When parties reduce their agreement to writing, parol evidence is not admissible to contradict, add to, or vary it; and this is so, although the particular agreement is not required to be in writing, the reason being that the written memorial is considered to be the best, and therefore is declared to be the only evidence of what the parties have agreed, as they are presumed to have inserted in it all the provisions by which they intended or are willing to be bound. Evans v. Freeman, supra; Terry v. R. R., 91 N.C. 236. InEvans v. Freeman, supra, it was further said: "Numerous cases have been decided by this Court in which the application of the same principle has been made to various combinations of facts, all tending, though, to the same general conclusion, that such evidence is competent where it does not conflict with the written part of the agreement and tends to supply its complement or to prove some collateral agreement made at the same time. The other terms of the contract may generally thus be shown where it appears that the writing embraces some, but not all, of the terms. Twidy v. Saunderson, 31 N.C. 5; Manning v. Jones, *Page 310 44 N.C. 368; Daughtry v. Boothe, 49 N.C. 87; Perry v. Hill, 68 N.C. 417;Willis v. White, 73 N.C. 484; Terry v. R. R., supra; Cummings v. Barber,99 N.C. 332."
This Court, in Ray v. Blackwell, 94 N.C. 10, and Moffit v. Maness,102 N.C. 457, refused to apply the principle allowing the unwritten part of the contract to be shown because the oral evidence tended to contradict or vary the written part of the contract, and not merely to add other consistent terms to it. In Moffit v. Maness, supra, we were (386) admonished that the rule against the admissibility of parol testimony to vary the terms of a written instrument has, perhaps, been relaxed too much, and that the farthest limit has been reached in admitting such testimony, beyond which it will not be safe to go. The Court sounds the alarm and warns us against the dangers ahead. It is safer to trust in the writing — the memorial selected by the parties for preserving the integrity of their treaty — than to confide in human memory for the exact reproduction of the facts, for, says Taylor, J., "Time wears away the distinct image and clear impression of the fact, and leaves in the mind uncertain opinions, imperfect notions, and vague surmises." Smith v. Williams, 5 N.C. 426. There was no attempt to reform the contract for fraud or mistake in this respect, and the fourth and fifth issues are not so framed.
The instruction upon the eighth issue left out of consideration that, by the terms of the oral agreement, as it is stated by defendant, the plaintiff had the right to suspend the cutting if the market price of lumber had so declined as to make it unprofitable, and the jury were told, instead, that they should answer that issue affirmatively, if they found that there was a stipulation for continuous cutting, and it was omitted from the agreement by fraud of plaintiff or mutual mistake. If it was made and left out of the written agreement by fraud or mistake, the real inquiry then was, whether the plaintiff had violated it by failing to cut continuously when in the then state of the lumber market it was profitable to continue the cutting.
It will be well to notice one position taken by the defendant, which is, that the contract is executory and not an executed contract of sale — a mere agreement to convey the timber, and not a perfected conveyance of it. But we understand that the same rule applies to both executory and executed written contracts, with regard to the competency of parol evidence to vary or contradict them. If the plaintiff has violated the contract as written by the parties, or as it should have been written, if there was fraud or mistake, he may not be able to recover, depending, of course, upon the nature of the breach and the particular terms of the contract. Looking at the verdict and eliminating the first eight (387) issues, as to which there was error, we do not see that the *Page 311 
plaintiff has committed any breach from which a forfeiture of his contract results. The jury have said that he did not remove any cut timber without paying for it. Apart from this alleged breach, which the jury have negatived, the important and dominating issues in the case are the first eight.
Our opinion, though, is that the contract is an executed one and not merely executory. We have so repeatedly held as to similar contracts in recent years. In Lumber Co. v. Corey, 140 N.C. 462, it was said: "This Court has so recently and so fully considered the question as to the true construction of contracts substantially like the one under review (which is substantially like the Wilson-Scarboro deed) that it would seem almost useless for us to add anything to what has already been said. We have decided that such a contract, which could be treated as in effect a conveyance, passes a present estate in the timber, defeasible as to all timber not cut within the limit of time fixed by the parties in their agreement. This is the true construction." And again, in Hawkinsv. Lumber Co., 139 N.C. 160: "The true construction of this instrument (a contract for cutting timber within a fixed period) is that the same conveys a present estate of absolute ownership in the timber, defeasible as to all timber not removed within the time required by the terms of the deed; and this statement of the law is approved in LumberCo. v. Corey, 140 N.C. 467." In Bunch v. Lumber Co., 134 N.C. 116, it is said that the form of the instrument counts for little. "It is more a difference in form than in substance. In no event should we give a construction the to instrument which will confer any greater right or estate than is commensurate with the object and purposes of the parties, as expressed in it. The spirit and letter of the contract exclude the idea that when the time fixed by it expired the defendant's assignor was to have any right, interest, or estate in the timber then standing on the land." And approving Strasson v. Montgomery, 32 Wis. 52, the principle is thus stated: "The conveyance is of all the trees and timber on the premises, with the proviso that the vendee should take the same off the land within four years. It is well settled, on (388) principle and by authority, that the legal effect of the instrument is that the vendor thereby conveyed to the vendee all of the trees and timber on the premises which the vendee should remove therefrom within the prescribed time, and that such as remained thereon after that time should belong to the vendor or to his grantee of the premises." See, also, Hornthal v. Howcutt, 154 N.C. 230, where the same doctrine was recognized and applied by this Court, speaking by Justice Allen. It has also been held that growing trees are a part of the realty, and deeds and contracts concerning them are governed by the law applicable to that species of property. Drake v. Howell, 133 N.C. 163; Hawkins v. *Page 312 Lumber Co., supra. We see, therefore, that this is an executed contract operating as a conveyance of the timber and a defeasible estate therein, and, of course, is required to be in writing. It cannot be contradicted or varied, nor can it be proved by parol, but only by the writing duly executed.
We should, perhaps, notice another matter. A careful reading of the testimony has not convinced us that there is any evidence of a mutual mistake by the parties in writing their contract. A contract is the agreement of both parties, and not merely the intention of one. Their minds must meet and be in accord upon one and the same thing at the same time.Rodgers v. Bell, 156 N.C. 378; Elks v. Ins. Co., 159 N.C. 619. "Even if the defendant had clearly shown that it so understood the agreement, it will not do, as the Court proceeds, not upon the understanding of one of the parties, but upon the agreement of both. No principle is better settled." Lumber Co. v. Lumber Co., 137 N.C. 431, citing Brunhild v.Freeman, 77 N.C. 128; Prince v. McRae, 84 N.C. 674; Bailey v. Rutges,86 N.C. 520, and other cases.
It follows from this doctrine that no contract can be altered or amended in any substantial respect, except by consent of both parties or by what may be equivalent thereto. If a court finds that there has been a mutual mistake, or its equivalent, viz., that there has been a mistake of one of the parties brought about by the fraud of the other, it will in an otherwise proper case, reform the contract, but not (389) otherwise. The undisclosed intention or understanding of one will not answer the purpose. "The mistake, to be relieved against in equity, must be one that is mutual, material, and not induced by negligence. It must be mutual, if the complaint wishes to have the instrument reformed, and not simply set aside, because equity cannot undertake to reform on the ground of ignorance or misapprehension of one of the parties as to any facts, though it may rescind. It is essential that the mistake, to be relieved against in equity, must be an error on both sides. If, however, such ignorance or misapprehension was induced or fraudulently taken advantage of by the other party, relief will be administered, but obviously on different grounds." Bispham on Equity, sec. 191. "Equity will reform a written contract or other instrument inter vivos where, through mutual mistake, or the mistake of one of the parties induced or accompanied by the fraud of the other, it does not, as written, truly express the agreement of the parties." Eaton on Equity, sec. 618; Warehouse Co. v. Ozment, 132 N.C. 839;Pelletier v. Cooperage Co., 158 N.C. 403; Dameron v. Lumber Co.,161 N.C. 498, and same case at this term, ante, 278.
The defendants' evidence in this case hardly conforms to the standard of proof required for a correction of written instruments. It tends to *Page 313 
show a mistake in his own mind, rather than one common to the parties — his own understanding, rather than the agreement of the parties. It must have been the intention of both to write the contract as he now claims it should be, and to insert in it the clause alleged to have been left out.
The judgment and verdict will be set aside, and a new trial granted.
New trial.
Cited: Archer v. McClure, 166 N.C. 145; Brown v. Mitchell, 168 N.C. 313;Leffal v. Hall, ib., 409; Wilson v. Scarboro, 169 N.C. 654; S. c.,171 N.C. 607.
(390)