CLIFFORD G. BISHOP v. M. JOHN DuBOSE.

(Filed 16 March, 1960.)

1. **Contracts § 12—**

Where the language of a contract is plain and unambiguous it is for the court and not a jury to declare its meaning and effect.

2. **Deeds § 26—**

Standing timber is realty and can be conveyed only by an instrument sufficient to convey realty.

3. **Deeds § 27—**

An instrument sufficient to convey standing timber is an executed contract and passes title to the timber as of the time of its execution, with reversion, to the vendor, where there is a time limitation, of the timber not cut within the time specified.

4. **Same—**

The term "logs" does not include growing trees, and a contract under which the vendor agrees to sell and the vendee agrees to buy "logs on the stump" at a specified price per thousand feet, to be paid before removal of the logs from the land, is an executory contract for sale of "logs," and title does not pass until after the logs are severed, measured and paid for.

5. **Deeds § 28—**

While under certain circumstances there may be a lease of standing timber and timber rights, it is essential to the validity of such lease that it be for a specified period of time.

**6. Contracts § 5—**

Unless forbidden by the statute of frauds, a contract may be partly written and partly oral, in which event the unwritten part of the agreement may be shown by parol, provided that the parol evidence does not contradict the written terms but merely supplements them.

**7. Appeal and Error § 51—**

Incompetent evidence admitted without objection must be considered in passing upon motion to nonsuit.

**8. Deeds § 28—**

A contract for the sale of logs to be cut by the purchaser within specified boundaries, the purchaser to pay for same before removal, together with evidence that the vendor orally stipulated the point at which the cutting was to be begun and the direction in which the purchaser was to cut, does not amount to a designation of all merchantable timber on the vendor's land and is insufficient to specify any particular area to be cut, or constitute a contract for the sale of any specific logs, and therefore the vendor's termination of the purchaser's license to go upon the land does not give the purchaser a right of action for damages for breach of the contract for the sale of logs then uncut.

**9. Same—**

A contract for the sale of unspecified logs to be cut by the purchaser and to be paid for before removal from the land gives the purchaser a license to go upon the land for the purpose of cutting the timber but, there being no direct promise on the part of the purchaser to sever and pay for all the timber on the tract and no designation of any particular trees to be cut, the license may be revoked at any time as to uncut timber, the license not being coupled with an interest and there being no contention that the licensee had made expenditures in reliance upon the license.

APPEAL by defendant from *Fountain, J.,* November 1959 "A" Civil Term, of BUNCOMBE.

This is an action for breach of timber contract.

The complaint alleges that by contract dated 11 January 1958 "defendant sold to plaintiff all ripe trees or trees that should be cut then on the defendant's Avery Creek farm," plaintiff began immediately to cut and remove trees from defendant's land in accordance with the contract and continued his logging operations until August 1958 when defendant demanded "that the plaintiff get off his farm and stay off of it" and threatened plaintiff with arrest if he failed to comply, and plaintiff has been damaged thereby in the sum of $23,947.00.

Plaintiff's evidence tends to show:

On 12 December 1955, plaintiff and defendant entered into a written contract whereby defendant agreed to sell and plaintiff agreed to buy "certain timber and pulpwood" on defendant's Avery Creek farm.

The contract applied only to "such boundaries, or portions, of said farm as may be agreed upon, from time to time." ". . . only marked trees, or those specifically agreed upon" should be cut. Plaintiff was to cut tops, limbs and other suitable portions into pulpwood. Logs were to be bunched, measured and paid for, at the rate of $20.00 per thousand board feet, using international log scale, before removal from the land. Method and rate of payment for pulpwood was agreed upon. The contract was to remain in force as long as mutually satisfactory and plaintiff was to proceed with reasonable diligence as long as the contract remained in effect.

Plaintiff "cut some" pursuant to this contract, "that was very little," he kept no record of the amount he cut. On 1 January 1958 plaintiff informed defendant he "could not go under the conditions of the contract" due to the condition of his back, he would "like to have the logs" but wished to be relieved from cutting and hauling pulpwood.

Another contract was executed by the parties on 11 January 1958, as follows:

"M. John DuBose, Seller, hereby agrees to sell, and Clifford Bishop, Buyer, hereby agrees to buy logs on the stump and pay for same before removal from Seller's Avery Creek farm, regular logs to be $20.00 per thousand (M) Board feet, International Log measure, and to be cut in specified boundaries, ahead of pulp wood men; only ripe trees or trees that should be cut, or those agreed on, to be taken. Provided that Buyer may cut selected White Oak, to be agreed on with Seller, for Barrel Staves, and pay $40.00 per Thousand Board feet or equivalent for same, provided Buyer has the suitable limbs and tops made into pulp wood and Seller is paid at the rate of $3.50 per cord for same.

"Buyer to oversee pulp wood haulers, and also a road out over Murry's from the North East part of Seller's land. Buyer to oversee pulp wood cutting and cut his logs ahead of them, so they can make pulpwood out of tops and limbs he leaves.

"And Buyer hereby waives any pulpwood rights he had in prior contracts with Seller."

The day after the signing of the last agreement the following transpired. Plaintiff's version: plaintiff "and Mr. DuBose and his lady and Slagle went to the lower end of the place, that is the east part of his place, joining Mr. Johnson . . . and defendant said, 'you know the boundaries of my property, begin here and cut back . . . I want you to cut from here back. You know what to cut.' " Slagle, plaintiff's witness, gave this version: Mr. DuBose said, "You know the line

and you will cut from here back, motioning toward the house." Defendant's version: "He and his wife did go with Mr. Bishop up there to his line that is adjacent to Johnson's line and showed Bishop the boundary he was to cut from Walnut Hill east of Johnson's line and north of Avery's Creek."

Thereafter, plaintiff cut 30,000 to 40,000 feet of timber on defendant's land. The area in which the cutting took place does not appear. For awhile plaintiff cut ahead of the pulpwood workers and supervised them. Defendant changed the pulpwood men and after this plaintiff did not cut ahead of them or oversee them. In August 1958 defendant contracted with Glen Baker and Ray Baker to cut trees on the land in question. On 15 August 1958 defendant ordered plaintiff to stay off his land. At this time there was 700,000 feet of merchantable timber on the land from which plaintiff could have made a profit of $23,947.00.

This action was instituted 24 December 1958. There was verdict for plaintiff in the amount of $500.00. From judgment in accordance with the verdict defendant appealed and assigned error.

*Sanford W. Brown and Mitchell T. King for plaintiff.*
*James S. Howell and M. John DuBose for defendant.*

MOORE, J. Defendant assigns as error the refusal of the court to allow his motion for nonsuit.

The basis of the action and theory of the trial is that defendant conveyed to plaintiff all merchantable timber on his Avery Creek farm, wrongfully dispossessed plaintiff and permitted another to remove the timber from the land. In determining the rights of the parties it is first essential that we examine the contract of 11 January 1958. It is plain and unambiguous. Accordingly, it is for the court and not the jury to declare its meaning and effect. *Young v. Mica Co.,* 237 N.C. 644, 648, 75 S.E. 2d 795; *Sellars v. Johnson,* 65 N.C. 104, 105.

"Standing trees are a part of the realty, and can be conveyed only by such instrument as is sufficient to convey any other realty." *Chandler v. Cameron,* 229 N.C. 62, 64, 47 S.E. 2d 528; *Williams v. Parsons,* 167 N.C. 529, 531, 83 S.E. 914. ". . . (T)imber deeds . . ., as ordinarily drawn, carry an estate of absolute ownership, defeasible as to all timber not cut and removed within the specified period." *Timber Co. v. Wells,* 171 N.C. 262, 264, 88 S.E. 327. Our decisions hold that standing timber is realty, "as much a part of the realty as the soil itself," that deeds and contracts concerning it must be construed as affecting realty and that in instruments conveying the growing and

standing timber to be removed within a specified time the title to all timber not severed within the time shall revert to the vendor. *Midyette v. Grubbs,* 145 N.C. 85, 88-9, 58 S.E. 795. The conveyance in writing, upon a valuable consideration, of specified standing timber with right to cut and remove within a definite time is an executed contract and passes title to realty. *Wilson v. Scarboro,* 163 N.C. 380, 387, 79 S.E. 811; *Lumber Co. v. Corey,* 140 N.C. 462, 465-7, 53 S.E. 300; *Hawkins v. Lumber Co.,* 139 N.C. 160, 162, 51 S.E. 852.

The contract in the case at bar is not a conveyance of standing timber. Defendant "agrees to sell" and plaintiff "agrees to buy . . . logs on the stump" from defendant's Avery Creek farm at a specified price per thousand feet to be paid before removal of the logs from the land. This is an executory contract for sale of "logs," title to pass after logs are severed, measured and paid for, with license to enter the land, sever and remove the logs.

"A log is a trunk of a tree cut down and stripped of its branches, or the stem or trunk of a tree cut into different lengths for the purpose of being manufactured into timber of various kinds. The word 'logs' does not include trees . . ." 54 C.J.S., Logs and Logging, sec. 1(a), p. 671. "Logs on the stump," as that expression is used in the contract under consideration may not be construed as referring to the growing tree but merely imports the necessity of severance by the vendee as part of the transaction in purchasing the "logs." Indeed other portions of the tree were to be cut into pulpwood by others. At the time of payment and passing of title it is contemplated that the subject of sale is logs, not growing trees.

A similar contract is construed in *Tremaine v. Williams,* 144 N.C. 114, 56 S.E. 694. There the seller agreed that buyer might place a sawmill on seller's land and pay seller by the thousand feet for pine timber, to be measured at the mill and paid for as cut. In this case there was a time limit. Subsequently, seller conveyed the timber and trees on his land to a third party, the plaintiff. Plaintiff sued to restrain further cutting by the buyer under the first contract. The Court said: "Standing trees are a part of the realty, and can be conveyed only by such an instrument as is sufficient to convey other realty. (Citing cases). The agreement between J. M. Williams (landowner) and defendant is not sufficient to convey the timber. It contains no operative words or words of conveyance. This defect is fatal, and as to the realty cannot be helped out by parol nor by prior registration of the defective instrument. . . . We cannot understand how the defendant can assert any right to it by virtue of his agreement . . ." (Parentheses ours).

The holding in *Gatlin v. Serpell,* 136 N.C. 202, 48 S.E. 631, is in accord. There plaintiff contracted to sell timber to defendant at $1.50 per thousand feet to be paid for as cut and a stipulated amount to be paid before the cutting began. The Court held: "It does not amount to an absolute sale of the timber on the land, the title to the timber did not pass at once to the defendant. No one can . . . arrive at the conclusion that the defendant had the right to take possession of the timber and dispose of it to others as he might see fit to do. . . . He had only the right to cut it and pay for it as he cut it, at a stipulated price per thousand feet."

Under certain circumstances there may be a lease of standing timber and timber rights, but "an indispensable legal requirement to the creation of a lease for a term of years is that it shall have a certain beginning and a certain end." *Manufacturing Co. v. Hobbs,* 128 N.C. 46, 47, 38 S.E. 26. This element is lacking in the contract *sub judice.*

But plaintiff insists that his contract with defendant is a personal covenant for breach of which he may recover damages. *Tremaine v. Williams, supra.* In other words, plaintiff contends that his contract, if not a conveyance or lease of standing timber, is a simple executory agreement for purchase of logs and execution on his part has been prevented by the wrongful conduct of defendant, which entitles him to damages for loss of profits. *Perkins v. Langdon,* 237 N.C. 159, 171, 74 S.E. 2d 634; *Pappas v. Crist,* 223 N.C. 265, 268 25 S.E. 2d 850.

We next inquire as to whether or not the quantity and location of the trees to be cut by plaintiff were sufficiently certain and definite to support an action for damages. As to the trees actually cut and the logs actually sold to plaintiff there is no question. *Tremaine v. Williams, supra; Gatlin v. Serpell, supra.* Nowhere in the contract is it stated that plaintiff may purchase *all* the merchantable logs which might be cut from defendant's land. It is provided that logs are to be cut "in specified boundaries, ahead of pulpwood men; only ripe trees and trees that should be cut, or those agreed on, to be taken." The contract itself is too indefinite to establish a right to cut and remove any particular logs. The specification of the areas to be cut over and the logs to be taken is left to subsequent agreements between the parties.

"Where a contract does not fall within the statute (of frauds), the parties may, at their option, put their agreement in writing, or may contract orally, or put some of the terms in writing and arrange others orally. In the latter case, although that which is written cannot be aided by parol evidence, yet the terms arranged orally may be proved by parol, in which case they supplement the writing and the whole

constitutes one entire contract." *Wilson v. Scarboro, supra,* at page 384 (quoting from Clark on Contracts).

The day following the execution of the written contract plaintiff and defendant went to the east part of the land at Johnson's line and defendant said: "You know the boundaries of my property, begin here and cut back . . . I want you to cut from here back. You know what to cut. You know the line and you will cut from here back, (motioning toward the house)." According to plaintiff's evidence, these are all of the directions given by defendant. Plaintiff, in his testimony and brief, construes these directions as embracing all the merchantable timber on defendant's land. Defendant's construction is otherwise. We do not agree that these statements by the defendant are sufficiently specific and inclusive to embrace all the merchantable timber on the land. The terms "cut from here back" and "motioning toward the house" are entirely too vague and indefinite to specify any particular area or logs. It specifies nothing more than a beginning point. Since plaintiff knew all the boundaries, it is strange indeed that the parties felt it necessary to go to a particular point on the land to give and receive instructions if it was their intention that plaintiff take all the merchantable timber. The contract provides for taking logs in "specified boundaries, ahead of pulpwood men." It is manifest that plaintiff was not to be permitted to roam the entire tract and choose such trees as were most desirable and accessible and leave the less desirable, but was to cut logs within a particular boundary before he moved to another and was to cut ahead of the pulpwood workers so that tops and limbs might be more conveniently gathered and cut into pulpwood while green. The fact that selected white oak was to be specifically agreed upon further indicates that the contract did not contemplate the sale of all merchantable timber. If plaintiff's contention is correct, defendant's instructions did not supplement the written contract but varied, altered and contradicted it. "When parties reduce their agreement to writing, parol evidence is not admissible to contradict, add to, or vary it; and this is so, although the particular agreement is not required to be in writing, the reason being that the written memorial is considered to be the best, and therefore is declared to be the only evidence of what the parties have agreed, as they are presumed to have inserted in it all provisions by which they intended or are willing to be bound." *Wilson v. Scarboro, supra,* at page 385.

It is true that plaintiff's evidence relating to the oral agreement and plaintiff's interpretation thereof was admitted without objection. Therefore, it must be considered on the question of nonsuit. *Lambros*

*v. Zrakas,* 234 N.C. 287, 289, 66 S.E. 2d 895. But the oral instructions of defendant, if effective at all, are a part of the contract and the construction of the contract is for the court. *Young v. Mica Co., supra.* It is our opinion that the directions given by defendant do not amount to a designation of all the merchantable timber on defendant's land and are insufficient to specify any particular area to be cut. The record is silent as to the area plaintiff actually cut over.

Furthermore, the contract here is a mere license. A contract to remove timber, providing for measurement of logs before removal from the premises and for payment at the time the logs are measured, and containing no direct promise on the part of the buyer to sever or pay for the timber in any event, lacks mutuality to pass present title and is a mere license revocable at any time by the landowner without liability. *Beckman v. Brickley* (Wash. 1927), 258 P. 488; *McCastle v. Scanlon* (Mich. 1953), 59 N.W. 2d 114; *Anderson v. Moothart* (Ore. 1953), 256 P. 2d 257; *Blair v. Russell & Co.* (Miss. 1919), 81 S. 785. "A license to enter on land and cut timber, while it remains executory, is revocable at any time. It is revocable at the will of the licensor, and terminates when he gives notice not to cut the timber further or refuses permission of the licensee to perform." 54 C.J.S., Logs and Logging, sec. 29 (d), p. 731. However, there are exceptions to this rule: (1) a license coupled with an interest may not be revoked; (2) "a license cannot be revoked as to acts done under it; the revocation is prospective not retrospective"; (3) ". . . Where the licensee has made expenditures upon the faith of the license, . . . it cannot be revoked at the will of the licensor unless the licensee can be placed in *statu quo.*" *Sorensen v. Jacobson* (Mont. 1951), 232 P. 2d 332, 26 A.L.R. 2d 1186.

Plaintiff's evidence fails to bring him within either of the enumerated exceptions. We have not overlooked the plaintiff's contention that by terms of the written contract he waived "any pulpwood rights he had in prior contracts with seller" and that this constituted a valuable consideration. According to plaintiff's evidence he asked to be relieved of the duty of cutting pulpwood on account of the condition of his back. This was the reason for making the new contract of 11 January 1958. The waiver was at his instance and for his benefit. The contention is without merit.

Defendant by giving notice to plaintiff to cease cutting revoked the license. On plaintiff's showing, he is not entitled to recover damages in this action and the trial court erred in denying defendant's motion for nonsuit.

The judgment below is
Reversed.