## Commonwealth v. McDannell

*Gerald R. Walmer*, District Attorney, for Commonwealth.

*Oscar F. Spicer*, for defendant.

MACPHAIL, P. J., May 19, 1967.—This defendant is charged with violating the Act of April 29, 1959, P. L. 58, sec. 842, 75 PS §842, which prohibits the transportation of "logs of any size" on our highways unless they are securely fastened with at least three binders, chains or straps.

On the date in question, defendant was hauling a truck load of pulpwood on a public highway in Adams County. The arresting officer testified that his attention was called to defendant's truck as it passed him going in the opposite direction because it appeared "very unsafe to me". The officer testified that there were three separate "ranks" of wood on the truck. According to him, one of the ranks had one chain around the wood and the bed of the truck. The other two ranks were secured by saplings inserted in metal stake holders on each side of the bed of the truck with a chain stretched between the saplings. He testified that the

logs were approximately four to five feet in length and six to 10 inches in diameter. The officer expressed the opinion that the load was not anchored properly and that "the bed slanted sharply to the center of the highway". Defendant testified that he had only two ranks of pulpwood on his truck, each rank being secured with a chain stretched between two saplings and one chain going around one rank of wood and the frame of the truck. He said the pulpwood sticks were five feet in length and varied from four inches to 10 to 12 inches in diameter.

There are two issues raised by defendant, both of which relate to an interpretation of the meaning of the statute (Act of April 29, 1959, supra). First, defendant argues that he was not hauling "logs" within the meaning of the statute and that, therefore, the statute does not apply in this case. Secondly, defendant argues that even if the statute does apply, he complied with the statute because he did, in fact, have three chains on his load.

The first issue involves a construction of the phrase "logs of any size". The defense produced an expert witness, a Professor Henry H. Chisman, Professor of Forestry at Pennsylvania State University. This witness testified that a "log" would be the specification of the trunk of a tree that has a miminum length of eight feet three inches and a minimum average diameter inside the bark at the small end of the log of six inches. He further defined a "standard log" in forestry as being 16 feet, three inches long with a minimum diameter inside the bark of six inches. Therefore, the eight feet, three inch log, according to him, would then be more accurately described as "half a log". The expert witness also agreed with the dictionary definition of a "log" as being "a particular piece of timber cut down and cleaned of brush especially the cut of

timber any size or length suitable for cutting into lumber". However, the witness emphasized that the key portion of the dictionary definition was that the piece of timber was "suitable for cutting into lumber". He said that, in his opinion, the four foot pieces of timber in issue here would not be suitable for cutting into lumber because there would be no market for it. In conclusion, this witness referred to the defendant's cargo as "pulpwood sticks or pulpwood poles".

To resolve the question of what is a "log", we have researched the Pennsylvania cases with no significant results. Although there are some old statutes on the books pertaining to the logging operations in Pennsylvania years ago, we view them and the cases under them as of little help. See Act of April 19, 1864, P. L. 480, sec. 1, 32 PS §481; Act of March 20, 1812, 5 Sm. L. 335, 32 PS §543; and the Act of December 11, 1866, P. L. (1867) 1365, sec. 1, 32 PS §558. It is significant, however, that the latter statute speaks of "saw logs". In the lumber and logging industry, the term "saw logs" has a technical meaning and is not the same as a "log". "The word 'log' has a definite significance and means the trunk of a tree cut down and stripped of its branches. A 'saw log' means a log cut into a length suitable for being sawed into lumber": State v. Addington, 121 N. C. 538, 27 S. E. 988, 990 (1897). See also Ladnier v. Ingram Day Lumber Co., 135 Miss. 632, 100 So. 369 (1924).

Cases outside of Pennsylvania indicate that there are many definitions of the term "log", depending upon whether it is used in a statute (and if so, the nature and purpose of the statute) or in an agreement or contract between one or more parties. "The question is, therefore, not what is the popular meaning as understood by any one class, but its meaning as used in the statute, and how the legislators have

employed it": Dead River Co. v. Assessors of Houlton, 149 Me. 349, 103 A. 2d 123 (1953). The definition apparently does not depend on the length of the timber: Cormier's Case, 124 Me. 237, 127 Atl. 434 (1925), held that a person employed in hauling timber cut into six foot lengths was hauling "logs". The case went on to say that a log is a cut of timber of any size or length suitable for sawing into lumber. The Dead River Co. Case, supra, held that "pulpwood denotes 'wood logs' peeled or unpeeled, usually cut to 4 foot lengths".

The diameter may or may not be important in determining what a log is, but that issue is irrelevant in the present case because the testimony of defendant's expert witness that a "log" has a minimum diameter of six inches at the small end of the log would apply to the timber transported on this defendant's truck because of defendant's own testimony that the diameter of that timber varied from four inches to 12 inches. It is obvious that the term is inexact, and if it has any technical definition, the definition will depend upon who is using the term and for what purpose. Thus far, we have seen that defendant's own expert distinguished between a "log" and "half a log". We have also seen that there is a "saw log". In Dexter v. Lathrop, 136 Pa. 565 (1890), the court referred to "small logs" (less than 12 inches in diameter). In Pallman v. Smith, 135 Pa. 188 (1890), the court referred to "very small logs".

What did the legislature intend here? First, it must be observed that the legislature was not adopting a logging or tax statute. They were adopting a highway statute. Secondly, it is doubtful if many, or any, of the legislators were foresters or loggers. It seems to us that the legislators were alert, however, to the potential problems in the use of the word "log", because they explained that they meant logs *of any size*.

It is our feeling that the legislature was using the term "log" as it is generally understood. A very simple definition of the term appears in Monogram Hardwood Co. v. Louisville & N. R. Co., 60 So. 949 (Ala. App.) (1913). There, a log is defined as "an unsplit stick of timber". As we previously noted, in State v. Addington, supra, the court said a "log" means the trunk of a tree cut down and stripped of its branches. A similar definition is found in Bishop v. Du Bose, 252 N. C. 158, 113 S. E. 2d 309 (1960). It is in this general sense that most of us understand the term, and we believe that for this type of statute, it is what the legislature intended.

There is just as much peril to highway safety if pulpwood sticks four feet long are strewn on the highway as there is if they are eight feet long. Law enforcement officers should not be required to carry a yardstick to tell if there has been a violation of this statute. It is the public interest that is at stake here. In ascertaining the intention of the legislature in the enactment of a law, we may be guided by the presumption that the legislature intends to favor the public interest as against any private interest: Act of May 28, 1937, P. L. 1019, sec. 52, 46 PS §552.

We conclude that this defendant was subject to the provisions of the Act of 1959.

Whether there were two ranks of logs or three ranks of logs on this truck is immaterial except as it may reflect upon the credibility of the witnesses. The Commonwealth's argument is that each rank should have three chains; therefore, under the Commonwealth's theory, defendant should have had at least six chains, binders or straps, even if there were but two ranks on the truck. Defendant says he had two ranks, but that only three chains were required. Under all of the credible testimony, there were only three chains on this entire load. Defendant contends that

this is all the statute requires, and it wouldn't make any difference if he had one, two, three or four ranks. In this connection, the testimony of the officer becomes very important, for he said that, in his opinion, the load was not anchored "properly" and that the truck appeared "very unsafe to him". He also described the truck bed as being slanted sharply to the center of the highway.

In our opinion, it would be important not only to show that there were at least three chains on the load, but that the chains "securely fastened" the load. It must be remembered that the statute says that there shall be "*at least*" three chains which shall "securely fasten" the load. If the load was not securely fastened, then, even though defendant's theory that the statute requires but three chains is correct, defendant would still be in violation of the statute. Here, only one chain actually went over the rank of wood and under the truck bed. The other two chains were merely stretched between saplings, and it was the saplings which were apparently used to confine the load to the truck bed. We feel that the officer's conclusion is a correct one; that is, that the load was not securely fastened. Apparently, the situation was so obviously dangerous to him that it was called to his attention long before he counted the chains and determined the nature of the load. Accordingly, we rule that even if defendant's contention is correct, the three chains used here did not securely fasten the load, and this is what the statute requires.

We can find no reported cases construing the statute. Defendant's counsel has attached to his brief the case of Commonwealth v. William M. Norman, Court of Quarter Sessions of Clinton County, Pa., October sessions, 1952, 45. We must respectfully disagree with the decision reached in that case.

And now, May 19, 1967, we find defendant guilty as charged and direct him to appear for sentence at the call of the District Attorney. An exception is noted for defendant.